FILED

2014 Dec-30  PM 12:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **GERALD R. SHEPARD** | ) | |

## <u>INFORMATION</u>

The United States Attorney charges that:

At all times material to this Information:

### <u>Introduction</u>

1.     Serra Nissan, located at 1500 Center Point Parkway, Birmingham, Alabama 35215, in the Northern District of Alabama, sold new and used cars and often assisted customers with obtaining car loans.

2.     As part of the car loan funding process, Serra Nissan collected personal information from prospective customers, including, but not limited to, customers' social security numbers, monthly income, pay stubs, current home addresses, personal references, and other information required by financial institutions in order to fund car loans. Some of that information was gathered when the customer came in and spoke to a salesman, while more detailed information was collected at the final signing or financing, conducted by a finance manager.

1

The entire process was overseen by the General Sales Manager ("GSM") or a sales manager.

3.     When a customer initially provided information to a salesman, the salesman would enter that information into a software program used by Serra Nissan to store and track information on its customers.  If a customer needed to obtain a car loan, the GSM or a sales manager would enter the customer's information into a different online database that simultaneously submitted their information to multiple financial institutions. The financial institutions could then respond with what financing terms, if any, they were willing to offer the customer. If a financial institution approved the transaction, the customer would be sent to the financing department to negotiate their loan price. There, they would meet with a finance manager who would provide them with their closing paperwork, both for the sale itself and the car loan financing.

4.     When a car loan was financed, the funds from the financial institutions were transmitted by wire from the lending institution directly to Serra Nissan. With the profit acquired from the auto loan, the employees involved in the deal (salesperson, finance manager, sales manager, and GSM), and the dealership, were paid their commission.

5.     At all times relevant, defendant **GERALD R. SHEPARD** was a Sales Manager at Serra Nissan and, along with the GSM, supervised the entire sales process.

6.     At all times relevant, Capital One Auto Finance (a division of Capital One National Association), was a financial institution then insured by the Federal Deposit Insurance Corporation ("FDIC").

### COUNT ONE
### Conspiracy
### 18 U.S.C. § 371

### THE CONSPIRACY

7.     The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 6 of this Information as though fully set out herein.

8.     From in or about August 2010 and continuing until in or about October 2013, the exact dates being unknown, in or around Jefferson County, within the Northern District of Alabama, and elsewhere, the defendant

### GERALD R. SHEPARD,

did knowingly and willfully conspire, combine, and agree with other persons, known and unknown to the United States Attorney, to commit offenses against the United States, that is:

(A) to devise and intend to devise a scheme and artifice to defraud a financial institution, and to obtain any of the moneys, funds, credits,

assets, securities, and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344; and

(B) to devise and intend to devise a scheme and artifice to defraud financial institutions, Nissan North America, and Serra Nissan customers, to obtain money and property belonging to others by means of materially false and fraudulent pretenses, representations, and promises by use of interstate wire communications and transmissions, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS OF THE CONSPIRACY

9.     It was a part of the conspiracy that defendant **GERALD R. SHEPARD,** and others both known and unknown to the United States Attorney, conspired to increase the number of cars sold by fraudulent means; to inflate the prices of vehicles; to falsify vehicle purchasers; and to misrepresent vehicle values, in order to increase profits to themselves.

10.     It was a further part of the conspiracy that defendant **GERALD R. SHEPARD,** and others both known and unknown to the United States Attorney, would falsify information or documents for customers that did not qualify for car loans, to ensure their car loans were funded.

4

11.     It was a further part of the conspiracy that defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, would falsely and fraudulently inflate the income information of prospective car purchasers submitted to financial institutions so customers who otherwise would not qualify for car loan funding, would be able to obtain a loan.

12.     It was a further part of the conspiracy that defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, would create false documents or materially alter existing documents, including, but not limited to bank statements and pay stubs, to be submitted to financial institutions to show that customers were earning more than their actual income.

13.     It was a further part of the conspiracy that defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, would direct finance managers and salesmen to submit fraudulent utility bills and bank statements to financial institutions to misrepresent proof of the customer's residency during the car-loan funding process.

14.     It was a further part of the conspiracy that defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, would falsely and fraudulently state on a credit application that two individuals lived together- when, in fact, they did not- so financial institutions would believe

there was a combined income greater than what actually existed for the individual customer.

15. It was a further part of the conspiracy that defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, would submit falsified information to financial institutions regarding what features were actually on the vehicle (*i.e.*, power seats, sunroofs, upgraded sound systems, running boards, towing packages, *etc.*), in order to artificially inflate the vehicle's retail value, so that the financial institution would increase the amount funded for the car.

16. It was a further part of the conspiracy that defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, were financially incentivized to increase the loan amount to increase commissions for certain employees.

17. It was a further part of the conspiracy that defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, would also defraud financial institutions in instances where the financial institution required the customer to pay a certain amount of cash at the time of signing, by creating a false document that made it appear the customer paid a down payment, when in fact, it was paid by the dealership.

18.    Defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, would coach customers that, if the bank called and asked about the down payment, the customers were to tell the financial institution that the customer, not the dealership, had paid the down payment.

19.    Defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, would also defraud financial institutions by making it appear that an individual who qualified for the loan purchased the vehicle when, in truth and fact, the actual purchaser was a different, non-qualifying individual.

20.    Defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, defrauded financial institutions by fraudulently increasing the value of a customer's vehicle trade-in to increase the profit on a deal, or by representing to the financial institution that the customer had traded in a vehicle when, in fact, the customer had not.

21.    Defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, defrauded customers and financial institutions by quoting a customer an inflated monthly payment on a vehicle the customer was interested in purchasing, so that a finance manager could add a warranty and gap insurance at the end of the transaction, without the customer realizing they were paying for them.

## OVERT ACTS

22.     In furtherance of the conspiracy and to achieve the objects thereof, defendant **GERALD R. SHEPARD**, and others both known and unknown to the United States Attorney, committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

23.     On or about August 26, 2010, Salesman #1 attempted to sell a car to a customer named C.M.

24.     Because C.M. would not qualify for a car loan, on or about August 26, 2010, **GERALD R. SHEPARD** told Salesman #1 that the car would have to be bought in the name of S.G., C.M.'s relative.

25.     On or about August 30, 2010, **GERALD R. SHEPARD** and Salesman #1 sold and financed a car in S.G.'s name, knowing the car was actually for C.M.

26.     Between September 17, 2012, and October 11, 2012, **GERALD R. SHEPARD,** Sales Manager #1, Finance Manager #1, Salesman #1, and Salesman #2, sold five different vehicles to one customer named J.D., knowing that four of the vehicles were actually for people other than J.D.

27.     On or about September 17, 2012, Salesman #2 was informed by the GSM that inflated income information was submitted to financial institutions regarding customer J.D.'s monthly income.

28.     On or about September 17, 2012, Salesman #2 told customer J.D. that if the bank called J.D. to confirm the information submitted during the loan application process, specifically, whether J.D. was the actual purchaser of the vehicles and whether J.D.'s income was correct, J.D. was to tell the bank the higher income amount, not J.D.'s actual income, and that he purchased the cars for himself, not other people.

29.     Between September 17, 2012, and October 11, 2012, defendants **GERALD R. SHEPARD,** Sales Manager #1, Finance Manager #1, Salesman #1, and Salesman #2, financed four of the vehicles J.D. purchased in J.D.'s name, representing to the lender that J.D. was the purchaser of the vehicle when, in truth and fact, the vehicles were for other people.

30.     On or about October 17, 2012, **GERALD R. SHEPARD** and Sales Manager #1 attended a meeting with the GSM and Salesman #3.

31.     On or about October 17, 2012, the GSM told Salesman #3 that two recent deals could not be funded until they created a "legal lie" for the bank that showed the customer making more income.

32.     On or about October 17, 2012, **GERALD R. SHEPARD** and others told Salesman #3 to go out and make the deal show that the customer made more per month than what the customer told Salesman #3.

33.     On or about October 17, 2012, **GERALD R. SHEPARD** and others told Salesman #3 that if he could not make the paperwork showing the customers made enough money, the deal would have to be split with another salesman who could make the documents necessary to fund the deal.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Bank Fraud
### 18 U.S.C. §§ 1344 and 2

34.     The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 6 of this Information as though fully set out herein.

35.     From in or about August 2010 and continuing until in or about October 2013, the exact dates being unknown, defendant **GERALD R. SHEPARD** devised a scheme and artifice to defraud Capital One Auto Finance (a division of Capital One National Association), a financial institution then insured by the FDIC, and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Capital One Auto Finance, by means of materially false and fraudulent pretenses, representations, and promises.

36.     It was part of the scheme and artifice that the defendant **GERALD R. SHEPARD**, with the intent to defraud, engaged in the conduct set forth in

paragraphs 9 through 34 of this Information, which the United States Attorney repeats and realleges as though fully set out herein.

37.    On or about October 16, 2012, in or around Jefferson County, within the Northern District of Alabama, and elsewhere, defendant **GERALD R. SHEPARD** knowingly executed, and attempted to execute, the scheme and artifice as set forth above, in that the defendant **GERALD R. SHEPARD,** aided and abetted by others known and unknown to the United States Attorney, made false representations, and submitted fraudulent information to Capital One Auto Finance, on behalf of a Serra Nissan customer named J.T.

All in violation of Title 18, United States Code, Sections 1344 and 2.

### COUNT THREE
### Making and Subscribing a False Return, Statement, or Other Document
### 26 U.S.C. § 7206(1)

38.    On or about April 7, 2013, in and around Jefferson County, within the Northern District of Alabama, and elsewhere, the Defendant,

### GERALD R. SHEPARD,

did willfully make and subscribe a United States Individual Income Tax Return, I.R.S. Form 1040, for the calendar year 2012, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That Individual Income Tax Return, Form 1040, which was prepared and signed in the Northern District of

11

Alabama and was filed with the Internal Revenue Service, contained the materially false line-items that Defendant **GERALD R. SHEPARD** then and there knew were false and understated or overstated as set forth in the table below:

| Line Item | Per Return | Actual | Difference |
|---|---|---|---|
| Line 22 – Total Income | $173,265 | $244,422.81 | $71,157.81 |
| Line 40 – Itemized Deductions | $63,816 | $19,240 | $44,576 |
| Line 52 – Residential Energy Credits | $3,014 | $0.00 | $3,014 |

All in violation of Title 26, United States Code, Section 7206(1).

## NOTICE OF FORFEITURE
### [18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c)]

39.     The allegations of Counts One and Two of this Information are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provision of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

40.     Pursuant to Federal Rule of Criminal Procedure 32.2(a), the Defendant is hereby notified that upon conviction of Counts One and Two of this Information the Defendant **GERALD R. SHEPARD** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.

41.    If any of the above-described forfeitable property, as a result of any act or omission of the Defendant:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any property of said Defendant up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

JOYCE WHITE VANCE
United States Attorney

AMANDA S. WICK
Assistant United States Attorney

ROBIN B. MARK
Assistant United States Attorney

13